UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RADIANCE CAPITAL RECEIVABLES          )
EIGHTEEN, LLC,                        )
                                      )
         Plaintiff,                   )
                                      )
         vs.                          )          Case No. 4:16-CV-1921-SPM
                                      )
MBO INVESTMENTS, LLC, et al.,         )
                                      )
         Defendants.                  )


## MEMORANDUM AND ORDER


This matter comes before the Court on the motion for summary judgment filed by

Defendants MBO Investments, LLC, ("MBO"), Owen & Sons Development Co., ("Owen &

Sons"), Marc A. Owen, Jacqueline Owen, Bryan K. Owen, and Mary Beth Owen (together with

Owen & Sons, the "Guarantors") (collectively, "Defendants"), (Doc. 97), and the cross motion

for summary judgment filed by Plaintiff Radiance Capital Receivables Eighteen, LLC,

("Radiance" or "Plaintiff") (Doc. 101). Also before the Court is Defendants' motion to strike

portions of the affidavit of Jody Burleigh, along with various exhibits and corresponding

statement of material facts submitted by Radiance. (Doc. 112). The parties have consented to the

jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

(Doc. 29). For the following reasons, the Court will grant Plaintiff's cross motion for summary

judgment, and will deny Defendants' motion for summary judgment, as well as their motion to

strike.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Radiance seeks payment from Defendants on Promissory Note #71484086-23460[1] ("Note" or "Loan Number 23460"), evidencing a loan made by Premier Bank ("Premier Bank") to MBO. The Note was originated on July 21, 2005, in the amount of $1,799,210.26, and was renewed several times thereafter. Prior to that, at various times in 2004 and 2005, each of the Guarantors executed commercial guaranties ("Guaranties") in favor of Premier Bank guaranteeing MBO's debt. The Note was secured by multiple lots of real estate owned by MBO, including one lot located at Mennemeyer Road in Lincoln County, Missouri, ("Mennemeyer Property"), which was subject to a Real Estate Deed of Trust[2] ("Deed of Trust") in favor of Premier Bank. According to Premier Bank records,[3] Premier Bank moved the Note to non-accrual status[4] on March 31, 2010. On July 13, 2010, Premier Bank authorized a short sale of the Mennemeyer Property, and the proceeds of the sale, $505,599.88, were applied to a partial principal pay-down of the defaulted Note.

Premier Bank failed on October 15, 2010, and the Missouri Division of Finance shut it down, at which time the Federal Deposit Insurance Corporation (the "FDIC") was appointed as

---

[1] A copy of the Note was attached to Radiance's complaint as Exhibit 2.

[2] Commonly, a "borrower executes a security instrument, such as a deed of trust or mortgage (depending on the state) that is recorded in the land records of the county where the real property is located" in order to secure a promissory note. *See Mortgage Electronic Registration Systems, Inc. v. Bellistri*, 2010 WL 2720802, at *7 (D. Mo. July 1, 2010). In this case, the Note was secured by the deed of trust on the Mennemeyer Property at issue here, as well as various other properties which were not sold at the same time as the Mennemeyer Property.

[3] Plaintiff's Exhibit A (Sealed Doc. 108) contains various Premier Bank records submitted by the FDIC during discovery in this case. Defendants assert that the Court should not consider information contained in those records because Plaintiff has not laid a proper foundation for them and cannot support its "subjective" interpretation of the information found therein. Indeed, Defendants seek to strike Exhibit A in its entirety, as more thoroughly discussed *infra*. With respect to whether or not Plaintiff has laid a proper foundation for introduction of the documents, the Court reminds Defendants that it has already ruled that the parties may not object to the authenticity of documents produced by the FDIC during discovery. *See* Doc. 77 at 3. As for Defendants' characterization of facts derived from the documents as being nothing more than Plaintiff's "subjective" interpretation of the documents, the Court finds that the documents speak for themselves, with no interpretation, subjective or otherwise, needed.

[4] A non-accrual loan is a non-performing loan that is not generating its stated interest rate due to non-payment from the borrower. *See* https://www.investopedia.com/term/nonaccrual-loan. (last visited on December 17, 2018).

Premier Bank's receiver.[5] At that time, Providence Bank of Columbia, Missouri, assumed Premier Bank's deposits, but the FDIC retained certain Premier Bank assets, including the Note and Guaranties at issue here. CADC/RADC Venture 2011-1, LLC, ("CADC"), an entity organized by the FIDC, was the successor by assignment from the FDIC.[6] The FDIC executed an allonge to the Note in favor of CADC on August 24, 2011, providing for the Note's payment "to the order of CADC . . . without recourse and without representation or warranty." Pursuant to a Loan Sale Agreement ("Loan Sale Agreement"), Bill of Sale and Amended Bill of Sale, executed in May 2016, Radiance purchased, as part of a bulk loan sale, the debt obligations of MBO from CADC, along with original records related to the debt, including the Note and Guaranties. Further facts will be discussed as they become relevant throughout the remainder of this memorandum and order.

On October 20, 2017, Plaintiff filed its Second Amended Complaint against MBO to enforce the Note and against the Guarantors to enforce the Guaranties. Plaintiff brings the following counts: Count I—Breach of Contract of Promissory Note (against MBO); Count II—Breach of Commercial Guaranty (against Owen & Sons); Count III—Breach of Commercial Guaranty (against Marc A. Owen); Count IV—Breach of Commercial Guaranty (against Jacqueline Owen); Count V—Breach of Commercial Guaranty (against Bryan K. Owen); Count VI—Breach of Commercial Guaranty (against Mary Beth Owen); and, Count VII—Quantum Meruit (against all Defendants). (Doc. 50).

---

[5] Plaintiff asks that this Court take judicial notice of the failure of Premier Bank and its subsequent receivership by the FDIC. The Court may take judicial notice of a fact that is not reasonably subject to dispute pursuant to Fed. R. Evid. 201(b)(2), and the Court will take judicial notice of this sequence of events.

[6] The FDIC, when acting as a receiver for failed institutions, often enters into structured transactions with private investors, using LLCs that are formed and co-owned by the FDIC and the private investors *See Radiance Capital Receivables Eighteen, LLC, v. Concannon*, No. 2:16-cv-04280-NKL, 2017 WL 4169629, at *1 (Sept. 20, 2017).

Plaintiff and Defendants filed the instant cross motions for summary judgment on August 24, 2018. (Docs. 97 and 101). The parties each filed Responses in Opposition to the Motions, Replies, and Sur-Replies. (Docs. 115, 118, 121, 124, 134, and 139). Lastly, on August 24, 2018, Defendants filed their motion to strike portions of Plaintiff's statement of material facts, Plaintiff's Exhibits A, B, C, D, and F as well as portions of E, and the Affidavit of Jody Burleigh. (Doc. 112).

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.* at 324. "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotations omitted).

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Township Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." *Bingaman v. Kansas City Power & Light Co*., 1 F.3d 976, 980 (10th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

## III.    DISCUSSION

### A. Parties' Arguments

Plaintiff asserts that it is entitled to summary judgment on all counts of its second amended complaint because it has made a prima facie case on enforcement of the Note and Guaranties, and Defendants have established no viable defenses.  Defendants, in their response to Plaintiff's motion for summary judgment and in their own cross motion for summary judgment, argue that Radiance does not have standing to sue because it cannot prove by competent evidence that the Note and Guaranties were assigned to it, and that even if Plaintiff has standing to enforce the Note, Plaintiff cannot prove that the Note at issue was part of the bulk loan sale pursuant to which Plaintiff purchased certain assets formerly belonging to Premier Bank. Finally, Defendants argue that even if this Note was among the assets purchased by Plaintiff, the Note was cancelled or extinguished by Premier Bank, leaving no amount due and owing.

### B.   Motion to Strike

The Court will first address Defendants' motion to strike, pursuant to which Defendants seek to strike most of the evidence submitted by Plaintiff in support of its motion for summary judgment, as well as the corresponding paragraphs in its accompanying statement of material uncontroverted facts. Radiance submitted the affidavit of Jody Burleigh, the Senior Portfolio Manager and custodian of records for Radiance. Ms. Burleigh's affidavit purported to authenticate certain exhibits submitted by Radiance in support of their motion for summary judgment. Defendants move to strike all save one paragraph of Ms. Burleigh's affidavit, arguing

that it is inconsistent with her prior testimony, and that she lacks the necessary knowledge to authenticate the documents referred to in the affidavit. Defendants also seek to strike Radiance's Exhibits A, B, C, D, and F, as well as paragraphs 31-32 and 37-54 of Plaintiff's Statement of Uncontroverted Material Facts, all of which draw information from those Exhibits. Defendants allege that these documents do not satisfy the authentication or hearsay foundational requirements.

Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A motion to strike is properly directed only to material contained in pleadings." *Khamis v. Bd. of Regents, Se. Mo. State Univ.*, No. 1:09-CV-145-RWS, 2010 WL 1936228, at *1 (E.D. Mo. May 13, 2013) (quoting *Mecklenburg Farm, Inc. v. Anheuser-Busch, Inc.*, No. 4:07-CV-1719-CAS, 2008 WL 2518561, at *1 (E.D. Mo. June 19, 2008)). Rule 7(a) defines "pleadings" as a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, and if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). The affidavit, exhibits, and statement of facts that Defendants seek to strike are not pleadings, and courts in this district have generally not permitted parties to attack such non-pleadings through motions to strike. *See, e.g., Shea v. Peoples Nat. Bank*, No. 4;11-CV-1415-CAS, 2013 WL 74374, at *1 and *2, (E.D. Mo. Jan. 7, 2013) (citing cases); *Khamis*, 2010 WL 1936228, at *1 (the document attached to the memorandum in opposition "is not a pleading and cannot be attacked with a motion to strike"); *see also Milk Drivers Local Union No. 387 v. Roberts Dairy*, 219 F.R.D. 151, 152 (S.D. Iowa 2003) ("Pleadings include complaints, answers, replies to counterclaims, answer to cross-claims, third-party complaints, and third-party answers. Therefore, a motion to strike a motion for summary judgment is

inappropriate and should be denied.") (internal citations omitted; collecting cases). Thus, the Court will deny Defendants' motion to strike portions of Ms. Burleigh's affidavit and accompanying documents and exhibits, as these documents are not pleadings.

However, Defendants correctly note that under Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Thus, in ruling on the parties' summary judgment motions, the Court will not consider any portions of the affidavit that are not based on personal knowledge or that contain inadmissible evidence. *See, e.g., Khamis*, 2010 WL 1936228, at *1). The Court also will not consider information found in the exhibits if it constitutes hearsay or is otherwise inadmissible. However, as further discussed below, the Court finds the documents on which it will rely in deciding these motions, including the affidavit and certain relevant exhibits, to be properly authenticated and otherwise admissible.

The Court will first address Defendants' assertion that Ms. Burleigh's affidavit should not be considered by the Court because it conflicts with her prior deposition testimony. Plaintiff argues, and the Court agrees, that her deposition testimony is not actually inconsistent with her prior testimony when examined within the context of the entire sequence of deposition questions and answers. Further, any apparent inconsistencies are explained by the fact that her deposition was taken before Defendants produced certain documents during discovery, and Plaintiff submitted a supplemental affidavit that explains this and that clarifies any seeming inconsistencies. Defendants argue that it is somehow unfair for the Court to consider the supplemental affidavit. However, Courts have broad discretion to allow the introduction of evidence at the summary judgment stage, and routinely permit the submission of supplemental

affidavits such as the one at issue here. *See Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 758 (8th Cir. 2015) ("District courts enjoy 'wide discretion in ruling on the admissibility of proffered evidence'" on a motion for summary judgment.) (quoting *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 689 (8th Cir. 2009)); *see also DG & G, Inc., v. Flexsol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 826 (8th Cir. 2009) (A district court has "broad discretion" in permitting a movant to supplement an affidavit to cure any defects). The Court will therefore consider Ms. Burleigh's supplemental affidavit as part of the record on summary judgment.

Aside from the affidavit of Ms. Burleigh, the documents to which Defendants object can be grouped into three general categories: (1) documents submitted during discovery by the FDIC; (2) documents produced by Defendants during discovery; and (3) business records kept by Radiance in the ordinary course of business and authenticated by Ms. Burleigh in her affidavit.

### i. Documents Submitted by FDIC

As to documents submitted by the FDIC, there can be no dispute as to their admissibility. During a discovery conference held in the chambers of the undersigned on May 21, 2018, the parties agreed, as reflected in this Court's order issued the next day (Doc. 77), that the authenticity and admissibility of any documents produced by the FDIC during discovery would not be disputed during the course of this litigation. Accordingly, the Court may consider them when deciding these motions.

### ii. Documents Produced by Defendants During Discovery

With regard to documents that Defendants themselves produced during the course of discovery, the Court finds that Defendants may not now dispute their authenticity. "The act of production is an implicit authentication of documents produced." *See Hammer v. JP's*

*Southwestern Foods, LLC*, No. 08-0339-CV-W-FJG, 2014 WL 2759089, at *2 (W.D.Mo. June 18, 2014) (citations omitted); *see also Orr v. Bank of America, NT & SA*, F.3d 764, 776 (9th Cir. 2002) ("[W]hen a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties."). The Defendants cannot have it both ways. They cannot voluntarily produce documents, thereby implicitly representing their authenticity, and then contend that those same documents cannot be relied on by Plaintiff because authenticity is lacking. Thus, the Court will consider documents produced by Defendants to be properly authenticated for purposes of Plaintiff's submission of those same documents in support of its motion for summary judgment.

### iii. Business Records Kept by Radiance in the Ordinary Course of Business

Finally, Defendants assert that Ms. Burleigh, in her affidavit, improperly purports to authenticate bank records and other documents that she did not personally prepare or input. Therefore, Defendants argue, her affidavit and the records to which it refers constitute inadmissible hearsay and cannot be considered by the Court. More specifically, Defendants argue that because Ms. Burleigh did not work for Premier Bank, the FDIC, or CADC, and did not personally prepare or maintain the records of these institutions, she cannot properly authenticate such records, even though they have been incorporated into Radiance's business records. The Court disagrees.

After reviewing Ms. Burleigh's affidavit and related documents, the Court finds that it complies with the requirements of Fed. R. Evid. 803(6),[7] and the disputed records are properly

---

[7] Fed. R. Evid. 803(6) states that records of a regularly conducted activity "are excluded from the hearsay rule if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian . . .; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

authenticated and may be considered by the Court in ruling on the parties' cross motions for summary judgment. Defendants' assertion that because Ms. Burleigh did not work for Premier Bank, the FDIC, or CADC, she cannot therefore properly authenticate documents produced by them is misplaced. Ms. Burleigh is not purporting to be a custodian of records who can attest to or authenticate the records of Premier Bank, the FDIC, or CADC. Rather, she is the custodian of records for Radiance, and is properly authenticating the business records of Radiance, including the documents from the other institutions that were integrated into Radiance's business records in the ordinary course of business.

The Eighth Circuit has long held that a "custodian or other qualified witness need not have personal knowledge regarding the creation of the document offered, or personally participate in its creation, or even know who actually recorded the information." *Resolution Trust Corp. v. Eason*, 17 F.3d 1126, 1132 (8th Cir. 1994) (internal quotation omitted); *see also Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999) ("Courts have generally agreed that Rule 803(6) does not require that a document actually be prepared by the business entity proffering the document, and would allow incorporated documents to be admitted based upon the foundation testimony of a witness with knowledge of the record keeping procedures of the incorporating business, even though the business did not actually prepare the document.") (gathering cases). "[A] record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied." *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010).

Ms. Burleigh provided an adequate foundation for the exhibits under Rule 803(6). It is undisputed that the documents were kept in the course of regularly conducted business by

Premier Bank, the FDIC, and CADC prior to their integration into Radiance's records. Radiance then incorporated the documents into its own business records in the ordinary course of business. Ms. Burleigh's affidavit establishes that she had knowledge of the record keeping procedures of Radiance, and that Radiance relied on the accuracy of the incorporated documents. The exhibits are properly authenticated, and may be considered by the Court along with other evidence of record.

### C. Parties' Cross Motions for Summary Judgment

The Court will turn now to the parties' cross motions for summary judgment. Missouri law governs the Court's analysis, as the Court must apply the substantive law of the forum state in which it sits when jurisdiction is, as here, based on diversity of citizenship. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "In a suit on a promissory note, a plaintiff makes a prima facie case when the note admittedly signed by the makers is introduced into evidence and there is evidence to show that the note is unpaid or there is a balance due and owing." *Magna Bank of Madison County v. W.P. Foods, Inc.,* 926 S.W.2d 157, 161 (Mo. App. 1996). A plaintiff is then "entitled to recover on the promissory note unless the defendants establish a defense. The burden is on the defendant to establish any and all defenses to plaintiff's recovery." *Id*.

To recover on a breach of guaranty in Missouri, the creditor must show that: (1) the defendant executed the guaranty; (2) the defendant unconditionally delivered the guaranty to the creditor; (3) the creditor, in reliance on the guaranty, thereafter extended credit to the debtor; and (4) there is currently due some sum of money from the debtor to the creditor that the guaranty purports to cover. *See ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.,* 854 S.W.2d 371, 382 (Mo. 1993) (en banc). The Guarantors do not dispute the validity of the Guaranties at issue in this case. Furthermore, Missouri courts have held that "a transfer of the

principal obligation, [such as the Note at issue here], is held to operate as an assignment of the guaranty," and that "[t]his is so even though there is no specific reference to the guaranty in the assignment." *American First Federal, Inc. v. Battlefield Center, L.P.*, 282 S.W.3d 1, 5-6 (Mo. App. 2009). Accordingly, the Guaranties in this case automatically followed the Note each time it was transferred or assigned, and are enforceable to the same extent that the Note is enforceable.

In cases that involve a party attempting to recover an amount owed to some other party, "proof of an assignment . . . is essential to a recovery." *CACH, LLC v. Askew*, 358 S.W.3d 58, 61-62 (Mo. 2012) (citing *Midwestern Health Mgmt., Inc. v. Walker*, 208 S.W.3d 295, 298 (Mo. App. 2006)). "The party must show clearly through a valid assignment [that] it is the rightful owner of the account at issue." *Id*. Where there are multiple assignments, "there must be proof of the validity of assignment every time the rights to collect the debt are transferred" in order for the party trying to collect the debt to demonstrate standing. *Id*. Under Missouri law, "'[n]o particular form of words is necessary to accomplish an assignment, so long as there appears from the circumstances an intention on the one side to assign . . . and on the other side to receive.'" *Rabius v. Brandon*, 257 S.W.3d 641, 645 (Mo. App. 2008) (quoting *Keisker v. Farmer*, 90 S.W. 3d 71, 74 (Mo. banc. 2002)). "[A]ny language, however informal or poorly expressed," that "shows the intention of the owner" of a right to recover a debt or damages on a contract-based cause of action to "clearly and unconditionally" transfer that right, and "sufficiently identifies the subject matter, will be sufficient to vest the property therein in the assignee." *Rotert v. Faulkner*, 660 S.W.2d 463, 469 and n. 10 (Mo. App. 1983) (quoting *Greater Kansas City Baptist & Cnty. Hosp. Ass'n., Inc. v. Businessmen's Assurance,* 585 S.W.2d 118, 119 (Mo. App. 1979)). Neither

the word "assign" nor "assignment" must be used in order to accomplish an assignment. *Businessmen's Assurance,* 585 S.W.2d at 119.

Here, there is no dispute that MBO signed the Note, that Premier Bank disbursed the funds in accordance with the Note, and that demand has been made for payment. Plaintiff, therefore, appears entitled to summary judgment if Defendants cannot establish a valid defense or otherwise demonstrate that there remains a genuine issue for trial. Defendants assert, in their response to Plaintiff's motion and in their own cross motion for summary judgment, that Plaintiff is not entitled to summary judgment, because it does not have standing to sue on the Note; that there is no evidence that the Note at issue was among the assets purchased by Plaintiff from CADC; and finally, that there is no longer any amount due and owing on the Note.[8] The Court will address each of these defenses below.

Defendants argue that Plaintiff cannot provide adequate proof of any in the series of assignments that led to Plaintiff's status as current assignee of the Note, and therefore Plaintiff lacks standing to enforce the Note. The first such assignment in this case was from Premier Bank to the FDIC. It is undisputed that the Note at issue originated from Premier Bank, which failed and was placed in receivership of the FDIC. Nevertheless, Defendants argue that there is insufficient evidence to show that the FDIC ever acquired the Note. However, this first assignment does not require evidentiary support from Plaintiff, as the assignment was effected by operation of law. When the FDIC became the receiver for Premier Bank, the FDIC then unquestionably possessed all Premier Bank's assets. *See* 12 U.S.C. § 1821(d)(2)(A)(i).[9] The

---

[8]  Defendants also argue that Plaintiff cannot enforce the Note because it is not a "holder" under Missouri's Uniform Commercial Code, ("UCC"). However, one need not be a UCC holder to enforce a Note, and Plaintiff's status as a "transferee" by assignment is clearly sufficient to allow it to enforce the Note. *See* R.S.Mo. §400.3-203.

[9]  The statute reads in pertinent part that the FDIC "shall, as conservator or receiver, and by operation of law, succeed to all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i).

FDIC is then authorized, pursuant to 12 U.S.C. Sec. 1821(d)(2)(G)(i)(II), to transfer assets and liabilities of an institution in default to another depository institution, or, as happened here, to a bridge depository institution. Therefore, Plaintiff need enter no further evidence to show the validity of the assignment from Premier Bank to the FDIC, and the FDIC clearly had the authority to then assign the Note to another entity.

The next assignment was from the FDIC to CADC. Here, the evidence demonstrates that the FDIC executed an allonge to the Note to CADC, which was included on the face of the Note, which was attached as an exhibit to Plaintiff's Second Amended Complaint, and the validity of which the Defendants have admitted. The allonge establishes that the FDIC intended to and did transfer the right to payment on the Note and its concomitant Guaranties to CADC. Therefore, this assignment is clearly established by competent evidence.

CADC, in turn, sold its rights to the Note and Guaranties to Radiance as part of a bulk loan sale, pursuant to which Plaintiff received original versions of the Note and Guaranties. Examining this assignment requires the Court to take up Defendants' second defense, which is that Plaintiff cannot prove that the Note and its related Guaranties was actually among the assets purchased by Radiance from CADC. Defendants point to the fact that the Loan Sale Agreement pursuant to which Radiance purchased the bulk loans from CADC indicated that among the loans purchased was one to MBO, identified as asset number 101891-001, yet the Note at issue here was Loan Number 23460. Defendants make much of the fact that Plaintiff does not possess any single document clearly establishing that asset number 101891-001 is in fact Loan Number 23460, and therefore, Plaintiff cannot prove that it was assigned the Note at issue in this case. After careful review of the record, it appears that there is not in fact one single document that, in and of itself, establishes that fact. However, that is immaterial, as there exists a series of related

documents[10] concerning the indebtedness of MBO which, when read together and in succession, do clearly establish that Loan Number 23460 is the loan referred to as asset number 101891-001 in the Loan Sale Agreement. Defendants do not dispute the validity or accuracy of these documents, but rather, moved to strike them as inadmissible, as discussed *supra*. As the Court finds the documents to be admissible, Defendants' argument fails. Plaintiff has clearly established that the Note was among the assets purchased from CADC, and that the Note was validly assigned by CADC to itself.

The Court will turn now to Defendants' argument that there is no longer any amount due and owing on the Note. Defendants base this argument on events that occurred after Premier Bank authorized the sale, in July 2010, of the Mennemeyer Property that served as partial collateral for the Note. As discussed *supra*, the proceeds of the sale, $505,599.88, were applied to pay-down the Note's principal amount. Defendants argue that the entire balance of over one million dollars remaining on the Note was forgiven or canceled when Premier Bank released the deed of trust on the Mennemeyer Property by recording a deed of release ("Deed of Release"), dated July 27, 2010, in Lincoln County, Missouri.

In a suit on a promissory note, a defendant who pleads the affirmative defenses of payment, cancellation, or forgiveness of the debt bears the burden of establishing it, and that burden is a "formidable" one. *See Mercantile Bank & Trust Co. v. Vilkins*, 675 S.W.2d 673, 675 (Mo. App. 1984) ("This burden is so formidable that even if a promissory note is stamped 'PAID', a presumption of payment arises, but the burden of proving payment continues to rest on

---

[10] Each time the Note changed hands it was assigned a new identifying number. For example, on February 9, 2011, the loan servicing agent for the FDIC, Midland Loan Services, Inc., wrote to MBO to inform them that their loan, previously identified as Loan Number 23460, would now be identified as loan number 030283127. After CADC purchased the loan, Sabal Financial Group, L.P., the loan servicing agent for CADC, in a letter dated October 5, 2011, informed MBO that the loan previously identified as loan number 030283127 would now be identified as loan number 101891-001. These documents were among those produced by Defendants during discovery in this case.

the maker of the note."); *see also Miller v. Gayman*, 482 S.W.2d 414, 418 (Mo. 1972) (When "renunciation [of a debt] was stated as an affirmative defense . . . defendants were as much required to assume the burden and prove this as they would be to prove payment."). Under Missouri law, "[c]ancellation can only be made by the holder of the instrument" and "is a matter of intention, and not of consent." *Landmark KCI Bank v. Marshall*, 786 S.W.2d 132, 141 (Mo. App. 1989). Furthermore, the cancellation of a debt is not valid if done inadvertently or by mistake. *See United Postal Sav. Ass'n v. Norbob Enterprises, Inc.*, 792 S.W.2d 898, 902 (Mo. App. 1990) ("[T]he cancellation of a debt which is made unintentionally, or under mistake or without the authority of the holder does not discharge the debtor.")

The Deed of Release Defendants rely on references the Mennemeyer Property, and states, in pertinent part, that MBO, as the owner of the property, "has FULLY PAID and SATISFIED said deed of trust and note and is justly and legally entitled to a FULL release of said deed of trust." Defendants point to the phrase "and note," and insist that the Deed of Release unambiguously proves that they have been released from any obligations on Loan Number 23460 that may have remained after the date it was recorded, July 27, 2010. Plaintiff counters that the vague reference in the Deed of Release to full payment of an unidentified note fails to demonstrate an express cancellation or extinguishment of the Note at issue in this lawsuit. [11]

The Deed of Release *does* clearly release MBO from the deed of trust evidencing the security interest Premier Bank had on the Mennemeyer Property. The Deed of Release specifically references the deed of trust on the Mennemeyer Property, with an attached legal description of the tract secured by the deed of trust, and expressly states that MBO is entitled to a "FULL release of said deed of trust." However, there is no reference in the Deed of Release to

---

[11]    It is worth noting that Defendants do not claim that the Note was ever fully paid, but rather, maintain that the balance of the Note was cancelled or forgiven.

Loan Number 23460. In fact, the Deed of Release contains no reference to any loan number at all,[12] and does not discuss any cancellation or forgiveness of debt. The Deed of Release, on its face, does not make reference to any particular note, and simply cannot be read to expressly and specifically indicate that Loan Number 23460 was cancelled or extinguished. The Court concludes that the Deed of Release's vague reference to an unidentified note, which is never again referred to anywhere in the document, is not sufficient to meet the "formidable" burden Defendants bear to prove the alleged forgiveness or cancellation of the Note. *See Mercantile Bank & Trust Co.*, 675 S.W.2d at 675.

Even if the Deed of Release could be interpreted to extinguish the debt remaining on the Note, and it cannot, there is ample uncontroverted evidence that any such cancellation of debt was made by mistake or inadvertence, and under Missouri law, is inoperative. *See United Postal Sav. Ass'n*, 792 S.W.2d at 902 ("[T]he cancellation of a debt which is made unintentionally, or under mistake or without the authority of the holder does not discharge the debtor."). The intention of Premier Bank to cancel the Note does not appear either by conduct or circumstance. Internal bank records of Premier Bank from 2010 indicate that the Bank did not intend to forgive the balance of the Note after receiving the proceeds of the Mennemeyer Property sale. For example, on July 9, 2010, Mr. James Gardner, Vice President of Premier Bank, emailed Mr. Lee R. Keith, President and CEO of Premier Bank about the Mennemeyer Property. The subject line stated "Marc Owen-MBO," and Mr. Gardner wrote, "I assume it was not your intention to release him from the rest of that loan—the deficiency would still be covered by the crossed collateral?" (Doc. 108 at 33). On July 13, 2010, Mr. Keith replied, stating, "Jim, that is correct.

---

[12]  MBO had multiple loans at Premier Bank, and multiple lots of real property served as cross collateral on the various loans.

We are to receive net proceeds. We are not releasing him from the rest of the note balance." *Id.* at 32.

Defendants assert that evidence of Premier Bank's intent regarding the Note prior to July 27, 2010, the date the Deed of Release was recorded, is irrelevant, as the Deed of Release operated to cancel the debt. Defendants further argue that there is absolutely no evidence after that date indicating a balance remaining on the Note. However, that is not the case. Premier Bank records throughout the late summer and early autumn of 2010 repeatedly evidence an outstanding principal balance on the Note. For example, Mr. Gardner, on September 7, 2010, directed a Premier Bank employee to send a demand letter to Owen & Sons/MBO on Loan Number 23460. (Doc. 108 at 35). Premier Bank records dated September 8, 2010, state that Loan Number 23460 to MBO had, on that date, an outstanding principal balance of $1,293,610.38, with an unpaid late charge of $14,187.78. Similarly, an internal Premier Bank record dated October 21, 2010, states that Loan Number 23460 had an outstanding principal balance of $1,293,610.38, with a maturity date of October 10, 2010, and interest due of $76,125.00. There are numerous other documents in the Premier Bank records dated after July 2010 that similarly indicate an outstanding balance on Loan Number 23460.

Additionally, Mr. Gardner, who signed the Deed of Release in his capacity as Vice President of Premier Bank, testified at his deposition taken during discovery in this case that it was not the intent of Premier Bank to release Defendants from their remaining obligations under the Note. (Doc. 114-1 at 13). Mr. Gardner further testified that the purpose of the Deed of Release was to release the deed of trust on the Mennemeyer Property, and had nothing to do with the underlying Note. *Id.* Because cancellation of debt depends for efficacy on the intention of the holder, no cancellation or forgiveness can be found under these circumstances. *See Household*

*Finance Co., Inc. v. Watson*, 522 S.W.2d 111,116 (Mo. App. 1975) ("Cancellation can only be made by a holder of the instrument . . . and is a matter of intention.").

To further bolster their argument that the balance of the Note was not extinguished after the sale of the Mennemeyer Property, Plaintiff points to MBO's tax filings and related working papers, which indicate that Defendants never believed the debt was forgiven. If the debt were forgiven, that should have been reflected in their tax filings, yet MBO stated in its federal tax returns that no debt was forgiven or canceled in 2010, 2011, or 2012. Furthermore, tax working papers submitted by Defendants during discovery indicate that MBO continued to report the debt under the Note for multiple years following 2010. Defendants argue that whether they reported any debt forgiveness to the IRS is irrelevant to the issue of whether the Note was actually forgiven or canceled by Premier Bank. It is true that MBO's failure to report debt forgiveness to the IRS during the relevant time period does not prove that no such forgiveness occurred. However, it is certainly suggestive that no debt was forgiven, particularly since tax filings are required to be truthful under penalty of law. *See* 26 U.S.C. § 6065 ("[A]ny return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain . . . a written declaration that it is made under the penalties of perjury."). It is disingenuous to argue that MBO's tax returns are irrelevant when it is true, conversely, that if MBO's tax filings had evidenced a claim of debt forgiveness that matched the amount due under the Note, that, by itself, would not prove that this particular Note was forgiven. But it would certainly have been suggestive of the same, and the Defendants would surely not be arguing that the tax filings were not relevant in those circumstances. In any event, the information in their tax records is not irrelevant, and the information therein supports Plaintiff's argument that the Note's remaining balance was not forgiven in 2010.

Other documents produced by Defendants also indicate that Defendants understood in 2010 that the sale of the Mennemeyer Property resulted only in the release of the deed of trust on that property, and not in the cancellation of the balance of the Note. For example, in a letter dated July 1, 2010, from Marc Owen to Lee Keith, President of Premier Bank, Mr. Owen stated that it was his understanding that after the sale of the Mennemeyer Property the bank would "release the property," and Mr. Owen sought information from Mr. Keith as to how Premier Bank would deal with the balance of the Note. In another letter, dated December 13, 2010, written by Marc Owen and addressed "To Whom It May Concern," Mr. Owen stated that "[t]he FDIC currently holds two loans that were previously held by Premier Bank," and that he had "no funds for repayment," at that time. It is apparent that Defendants themselves plainly did not believe that the remaining amount due on the Note had been cancelled upon the sale of the Mennemeyer Property.

The Court concludes that, to the extent the Deed of Release could be interpreted to reflect the cancellation of the Note, the cumulative evidence in the record before it demonstrates that any such release was made in error and did not work to cancel the balance due on the Note. Defendants' argument to that effect fails.

The Court finds that the evidence presented by the parties does not "give rise to sufficient disagreement as to require submission to a jury" because it is "so one-sided that [Plaintiff] must prevail as a matter of law." *See Bingaman*, 1 F.3d at 980. Defendants have failed to prove any viable defenses, and have not otherwise set out specific facts showing that there remains a genuine issue for trial. Plaintiff is entitled, therefore, to summary judgment on enforcement of the Note and Guaranties. The Court will turn now to discussion of the amounts due, including requested attorneys' fees.

### D. Amount Due

Plaintiff asserts that Defendants owe unpaid principal on the Note in the amount of $1,293,610.38; unpaid interest as of October 21, 2010 of $76,125; interest accruing after October 21, 2010, at a per diem rate of $565.95 for 2,865 days for a total of $1,621,459.76 since that date; and unpaid late charges of $64,680.52; for a total of $3,055,875.66, plus attorneys' fees and other costs of collection related to enforcement of the Note and Guaranties. Although Defendants do not admit to the accuracy of the loan balance offered by Plaintiff, they have presented no evidence to contradict the amount, aside from their rejected assertion that nothing remains due and owing. The Court agrees with Plaintiff that the balance remaining on the Note[13], along with the related amount in interest and late fees, is readily ascertainable by simple mathematical calculation. Any doubts expressed by Defendants about the amount of principal and interest due are not sufficient to create a material issue of fact. *See, e.g., American Bank of Princeton v. Stiles*, 731 S.W.2d 332, 339 (Mo. Ct. App. 1987) (defendants failed to raise issue of material fact concerning plaintiff's calculation of debt owed when defendants merely disputed the amount but offered no specific facts explicitly showing the amount was improper). The Court will award judgment in the amounts requested by Plaintiff.

### E. Attorneys' Fees

Plaintiff also asserts that it is entitled to attorneys' fees and costs related to enforcement of the Note and Guaranties. "In a diversity action, state law governs the availability of attorneys' fees where no conflicting federal statute or court rule applies." *Weitz Co. v. MH Washington*, 631 F.3d 510, 528 (8th Cir. 2011). Under Missouri law, if a contract provides for the payment of attorneys' fees and expenses incurred in the enforcement of a contract provision, the court "must

---

[13]   The principal balance on the Note was consistently stated to be $1,293,610.38 in documents from Premier Bank, the FDIC, and CADC,

award them to the prevailing party." *Schnucks Carrollton Corp., v. Bridgeton Health and Fitness, Inc.,* 884 S.W. 2d 733, 739 (Mo. Ct. App. 1994); *see also Midland Property Partners, LLC v. Watkins*, 416 S.W.3d 805, 817 (Mo. Ct. App. 2013) (court has "no discretion whether to award attorneys' fees where they are recoverable by contract"). The Note provides in relevant part that the Borrower agrees to pay "all expenses of collection, enforcement or prosecution of . . . rights and remedies under this Note." (Doc. 125-1 at 21). It defines expenses as "attorneys' fees, court costs and other legal expenses." *Id*. The Guaranties provide, in relevant part, that each Guarantor is "liable for all indebtedness, without any limitation as to amount, plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto." (Doc. 125-1 at 35). Radiance is therefore entitled to attorneys' fees and related expenses incurred in enforcing the Note and Guaranties, as those documents specifically provided for the recovery of such fees related to enforcement.

Where attorneys' fees are available, federal procedural rules govern how a litigant requests them. *See Karl's, Inc. v. Sunrise Computers, Inc*., 21 f.3d 230, 232 (8th Cir. 1994) (holding decision whether to conduct a hearing on attorneys' fees award is a matter of procedure governed by federal law). Federal Rule of Civil Procedure 54 provides that a party may seek attorneys' fees by (1) filing a motion not later than fourteen days after the entry of judgment; (2) specifying the judgment and the statute, rule, or other grounds entitling the movant to the award; (3) stating the amount sought or providing a fair estimate of the amount sought; and (4) disclosing the terms of any agreement about fees for the services for which the claim is made, if the court so orders. Fed. R. Civ. P. 54(d)(2). Subsequent to the entry of this order and its accompanying judgment, Plaintiff should timely file a motion for attorneys' fees with appropriate supporting documentation pursuant to Fed. R. Civ. P. 54(d)(2) and Local Rule 8.02.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff is entitled to summary judgment on Counts I-VI of its Second Amended Complaint, in the amount of $1,293,610.38 of unpaid principal on the Note; unpaid interest as of October 21, 2010, of $76,125; interest accruing after October 21, 2010, at a per diem rate of $565.95 for 2,865 days for a total of $1,621,459.76 since that date; and unpaid late charges of $64,680.52; for a total of $3,055,875.66, plus attorneys' fees and costs of collection on Count I against MBO for breach of contract of promissory note; on Count II against Owen & Sons for breach of commercial guaranty; on Count III against Marc A. Owen for breach of commercial guaranty; on Count IV against Jacqueline Owen for breach of commercial guaranty; on Count V against Bryan K. Owen for breach of commercial guaranty; and on Count VI against Mary Beth Owen for breach of commercial guaranty.[14] Defendants' motion for summary judgment and motion to strike shall be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 101) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 97) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (Doc. 112) is **DENIED**.

---

[14]  Because the Court is granting Counts I-VI of Plaintiff's motion for summary judgment, the Court will not address Plaintiff's alternative Count VII for Quantum Meruit recovery against all Defendants, and that Count is dismissed with prejudice.

**IT IS FINALLY ORDERED** that after entry of judgment, Plaintiff should timely file a motion for attorneys' fees with appropriate supporting documentation pursuant to Local Rule 8.02. The Court will issue a separate judgment consistent with this Memorandum and Order.


SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of January, 2019.